UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA
BATON ROUGE DIVISION

_____          *
                                           *
TRUSSELL GEORGE                            *
                                           *
            PLAINTIFF                      *
                                           *
                                           *
            VS.                            *
                                           *
LOUISIANA DEPARTMENT OF PUBLIC             *
SAFETY AND CORRECTIONS; JAMES              *
M. LEBLANC, Secretary of the Louisiana     *
Department of Public Safety and            *          CIVIL ACTION NO.3:14-00338-JWD-SCR
Corrections, in his official capacity;      *
WHALEN GIBBS, Assistant Secretary of        *
the Louisiana Department of Public Safety   *
and Corrections, in his official and        *
individual capacities; GERALD STARKS,       *
Director of the Division of Probation and   *
Parole, in his official and individual      *
capacities; SCOTT TUBBS, Probation          *
and Parole Agent, in his official and       *
individual capacities; KATHY KLIEBERT, *
Secretary of the Louisiana Department of    *
Health and Hospitals, in her official       *
capacity; LOUISIANA DEPARTMENT             *
OF HEALTH AND HOSPITALS ERIC               *
BRADY, District Forensic Coordinator, in    *
his official and individual                 *
capacities; and CHARLES P. VOSBURG,         *
Consulting Psychologist for the Department  *
of Health and Hospitals, in his official and *
individual capacities.                      *
                                           *
            DEFENDANTS                      *
_____          *

<u>**FIRST AMENDED COMPLAINT**</u>

**I.      <u>INTRODUCTION</u>**

1.      Plaintiff, Trussell George, Jr., is a person with a mental illness who was placed in
the community on conditional release following a finding that he was Not Guilty by Reason of
Insanity (NGRI) to a criminal offense. He brings this civil rights action under 42 U.S.C. § 1983
and federal statutes barring discrimination on the basis of disability seeking monetary damages, a
declaratory judgment, and injunctive relief to enjoin Defendants' policies, practices, and
procedures, executed under color of state law, that caused him to be incarcerated in a correctional
facility in Louisiana solely because he was alleged to have violated a term of his conditional
release. Plaintiff contends that Defendants' policies, practices, and procedures, which caused him
to be arrested and incarcerated for almost a month, violated his rights under the Due Process
Clause of the Fourteenth Amendment to the United States Constitution, and subjected him to
intentional discrimination in violation of Section 504 of the Rehabilitation Act of 1973 ("Section
504") and Title II of the Americans with Disabilities Act of 1990 ("ADA").

**II.      <u>JURISDICTION</u>**

2.      This Court has federal question jurisdiction under 28 U.S.C. §§1331 and 1343, in
that this is an action arising under the Fourteenth Amendment to the United States Constitution,
the ADA, and Section 504.

3.      Venue is appropriate in this court under 28 U.S.C. §1391(b)(2) since the
Defendants reside in this district.

**III.      <u>PARTIES</u>**

4.      Plaintiff TRUSSELL GEORGE, JR. is a 36-year-old man diagnosed with mental
illness and a significant intellectual and developmental disability.  He is currently confined as on
inpatient basis at the Eastern Louisiana Mental Health System (ELMHS) in Jackson, Louisiana.

2

Until May of this year, he resided at the Stern Community Group Home located at 15626 Confederate Ave., Baton Rouge, Louisiana. He has received treatment for mental illness since the age of 12.  Mr. George's mental health diagnoses include Schizophrenia, Bipolar Disorder, and Psychosis NOS. He is currently on conditional release under the supervision of the Division of Probation and Parole of the Louisiana Department of Safety and Corrections and the Community Forensic Coordinators of the Louisiana Department of Health and Hospitals, having been found NGRI to a charge of possession of a weapon by a felon.

5.     LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS is the state agency responsible for monitoring and providing services to persons placed on conditional release or probation. The Division of Probation and Parole, which supervises Mr. George's conditional release, is located within the Department. The Department receives federal financial assistance and is a public entity as defined by 42 U.S.C. § 12131(1) (B).

6.     Defendant JAMES M. LEBLANC is Secretary of the Louisiana Department of Public Safety and Corrections. Pursuant to La. R.S. 36:403, he is responsible for the administration, control, and operation of the functions, programs, and affairs of the Department. He is also responsible for, among other things, operating a probation and parole system, in accordance with the law. La. R.S. 36:401(B)(3). He is being sued in his official capacity only.

7.     Defendant WHALEN GIBBS is the Assistant Secretary of the Louisiana Department of Public Safety and Corrections. As such, he directs the operations of the Louisiana Division of Probation and Parole. Pursuant to La. R.S. 15:574.11(A), the Division of Probation and Parole provides for the investigation and supervision of adjudicated adult offenders. Also, pursuant to La. Code Crim. P. 658(B)(1), the division is charged with supervising individuals who have been placed on conditional release following a finding of NGRI. Whalen Gibbs is being sued in his official and individual capacities.

3

8.     Defendant GERALD STARKS is the Director of the Louisiana Division of Probation and Parole. As such, he assists in the administration, development, and implementation of policies of the Division of Probation and Parole. Gerald Starks is being sued in his official and individual capacities.

9.     Defendant SCOTT TUBBS is an employee of the Louisiana Division of Probation and Parole, acting under the direction and supervision of Defendants LeBlanc, Gibbs, and Starks. Mr. Tubbs has responsibility for monitoring individuals placed on conditional discharge and implementing the policies and procedures of the Division of Probation and Parole. On information and belief, he is a decision-maker regarding whether conditionally discharged individuals whom he supervises are arrested and incarcerated. Scott Tubbs is being sued in his official and individual capacities.

10.     Defendant KATHY KLIEBERT is the Secretary of the Louisiana Department of Health and Hospitals ("DHH").  Pursuant to La. R.S. 36:254, she is responsible for the oversight, supervision and control of DHH and its divisions and is ultimately responsible for ensuring that DHH's services for people with disabilities are provided in conformance with federal law. The Community Forensic Coordinators program and ELMHS, which monitors and provides services to persons found NGRI, are located within her Department. She is being sued in her official capacity only.

11.     Defendant, LOUISIANA DEPARTMENT OF HEALTH AND HOSPITALS (DHH) is a state agency, who in conjunction with the DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS, is responsible for monitoring and providing services to persons who have been found NGRI and who have been either placed on conditional release or committed to a state or private mental health facility. DHH operates the District Forensic Coordination Program and Eastern Louisiana Mental Health System (ELMHS). The District Forensic Coordination

4

Program monitors Mr. George while he is on conditional release and is responsible for providing him with appropriate mental health services while he is in the community. The Department receives federal financial assistance and is a public entity as defined by 42 U.S.C. § 12131(1) (B).

12.     Defendant ERIC BRADY is employed as a District Forensic Coordinator by DHH and, as such, works under the direction and supervision of Defendant Kliebert. Mr. Brady has responsibility for monitoring individuals who have been found NGRI and placed on conditional discharge and for and implementing the policies and procedures of DHH with respect to such persons. Mr. Brady was a key decision-maker in the arrest and incarceration of Plaintiff in 2013 and 2014. Mr. Brady is being sued in his official and individual capacities.

13.     Defendant CHARLES P. VOSBURG, Ph.D. is a consulting psychologist with Community Forensic Services at ELMHS. Dr. Vosburg has responsibility for evaluating and providing mental health services, in accordance with the policies and procedures of DHH, to individuals placed on conditional discharge and persons found NGRI who have been placed at ELMHS. Dr, Vosburg was a key decision-maker in the arrest and incarceration of Plaintiff in 2014. Dr. Vosburg is being sued in his official and individual capacities.

IV.     **STATUTORY SCHEME**

14.     La. R.S. 14:14 states that an individual charged with a criminal offense is exempt from criminal responsibility for his behavior when "the circumstances indicate that because of a mental disease or mental defect the offender was incapable of distinguishing between right and wrong with reference to the conduct in question."

15.     La. R.S. 28:2(20) defines a mentally ill person as "any person with a psychiatric disorder which has substantial adverse effects on his ability to function and who requires care and treatment."

5

16.     When the defendant enters a plea of not guilty and NGRI, the court may appoint a Sanity Commission, as provided in La. Code Crim. P. art. 644, to examine the defendant to determine whether he or she was "insane" at the time of the offense. La. Code Crim. P. arts. 650–652.

17.     A finding of NGRI means that the defendant has committed the acts that constitute the crime; however, the defense has proven by a preponderance of the evidence that the defendant was insane at the time the acts were committed and thus cannot be held legally responsible. La. Code Crim. P. art. 651.

18.     La. Code Crim. P. art. 654 provides that if the defendant is found NGRI in a non-capital case, the court shall remand him to the parish jail or to a private mental institution approved by the court and promptly hold a hearing to determine whether her or she can be released. When a verdict of NGRI is returned in a capital case, the code article requires the court to  commit the defendant to a state or private mental institution for care, custody, and treatment.

19.     Under the United States Constitution, an acquittee's liberty may be curtailed only upon a finding that he is both dangerous and mentally ill.  However, implicit in the NGRI acquittal is a finding that the defendant is mentally ill. Therefore, at the initial hearing following a NGRI finding, the only issue before the court in determining whether the acquittee should be released or committed, is whether the acquittee is dangerous.

20.     Under Louisiana's statutory scheme, after a contradictory hearing, and considering the Sanity Commission's findings, the court may order the individual's release or may place him on conditional release. To place the insanity acquittee on conditional release, the court must find that:

> (1)     Based on the factors which the court shall consider pursuant to Article 657, he does not need inpatient hospitalization but needs outpatient treatment, supervision, and monitoring to prevent his condition from

deteriorating to a degree that he would likely become dangerous to self and others.

(2)     Appropriate outpatient treatment, supervision, and monitoring are reasonably available.

(3)     There is significant reason to believe that the insanity acquittee, if conditionally released, would comply with the conditions specified.

(4)     Conditional release will not present an undue risk of danger to others or self, as defined in R.S. 28:2(3) and (4).

La. Code Crim. P. art. 657.1.

21.     If the court determines that the defendant cannot be released without danger to others or to himself, the court shall order him committed to a proper state mental institution or to a private mental institution approved by the court for custody, care, and treatment. La. Code Crim. P. art. 654.

22.     Even if a defendant has been committed under La. Code Crim. P. art. 654 as a result of having been found dangerous and presumed mentally ill based on the finding of NGRI, the acquittee may later apply for discharge or conditional release.

23.     The insanity acquittee or the superintendent of the facility in which he is being held may petition the review panel for discharge. If the review panel determines that the acquittee is not a danger to himself or others, it can recommend to the court that he be discharged conditionally or unconditionally or placed on probation.

24.     Upon this recommendation or upon an acquittee's petition, the court may hold a contradictory hearing, La. Code Crim. P. art. 655(A), and order that the acquittee be conditionally released for a "fixed or an indeterminate period." La. Code Crim. P. art. 657.

25.      In ordering a conditional release, the court "shall subject a conditionally released insanity acquittee to such orders and conditions it deems will best meet the acquittee's need for

treatment, supervision, and monitoring and will best serve the interests of justice and society." La. Code Crim. P. art. 657.1(B).

26.     Typically, the conditional release orders impose restrictions and requirements, such as compliance with treatment, signing release of information forms, or refraining from the use of alcohol, that do not in and of themselves constitute criminal conduct, even if violated.

27.     When ordered, a conditional release must extend at least one year but not more than five, although it can be extended after five years in one-year increments for good cause shown at a yearly contradictory hearing. La. Code Crim. P. art. 657.2.

28.     The insanity acquittee on conditional release is supervised by the Division of Probation and Parole of the Louisiana Department of Public Safety and Corrections.

29.     In addition, the Community Forensic Services (CFS) program of the Department of Health and Human Services, through its District Forensic Coordinators (also known as "conditional release program coordinators"), is responsible for the community treatment and monitoring of individuals placed in the community on conditional release after being found NGRI. *See* La. Code Crim. P. 658(B).

30.     Pursuant to La. Code Crim. P. art. 658(B)(1), if the division of probation and parole alleges that the acquittee violated or is about to violate a condition of his conditional release, he may be arrested and detained in a correctional facility under the provisions of La. Code Crim. P. art. 899, which applies to those who have been convicted of a crime and placed on probation.

31.     The court must be notified of violations and receive a recommendation from the conditional release program coordinator as to whether the conditional discharge should be revoked or the insanity acquittee recommitted. La. Code Crim. P. art. 658(B)(5).

32.     Pursuant to La. Code Crim. P. art. 658(B)(6), a court, on its own motion or that of the district attorney or probation officer, can order the acquittee arrested and incarcerated in order to determine whether the acquittee violated a term of his conditional discharge.

33.     Upon receiving a report and recommendation pursuant to La. Code Crim. P. art. 658(B)(5), the court must "immediately" hold a hearing or transfer the case to the parish of commitment, if different from that of the arrest, at which place the hearing should be held "as soon as possible." La. Code Crim. P. art. 658(B)(6).

34.     If the court determines that there has been a violation of a term of the conditional release or that the acquittee was about to violate the conditions of release, it may do any of the following:

> (a)     Reprimand and warn the probationer;
>
> (b)     Order that supervision be intensified;
>
> (c)     Modify or add additional conditions to the probation;
>
> (d)     Revoke the probation and recommit the probationer to a state mental institution, subject to consideration for discharge or release on probation only after one year has elapsed from the date of revocation and in accordance with the procedure prescribed in Articles 655 through 657 for a first application and hearing.

La. Code Crim. P. art. 658(C).

35.     If an acquittee violates the terms of conditional release, there are options under Louisiana law other than arrest and incarceration. If a person on conditional release or otherwise on probation under the aforementioned code provisions is in need of acute, i.e. short-term, hospitalization and is not charged with a new criminal offense, he may be voluntarily admitted pursuant to La. R.S. 28:52 or admitted by emergency certificate pursuant to La. R.S. 28:53 to the Feliciana Forensic Facility or to another suitable treatment facility, with subsequent notice to the court. La. Code Crim. P. art. 658(B)(4).

36.     If the court determines that the defendant cannot be released without danger to himself or others, the court shall order him committed to a proper state mental institution or to a private mental institution approved by the court for custody, care, and treatment. La. Code Crim. P. art. 654.

37.     Even if a defendant has been committed under La. Code Crim. P. art. 654, as a result of having been found dangerous and presumed mentally ill based on the finding of NGRI, the acquittee may later apply for discharge or conditional release.

38.     The insanity acquittee or the superintendent of the facility in which he or she is being held may petition the review panel for discharge, which can recommend to the court that the person be discharged conditionally or unconditionally or placed on conditional release, after finding that the acquittee is not a danger to himself or others or is no longer mentally ill.

39.     The court can completely discharge an acquittee from conditional release "after the expiration of one year in a supervised conditional release program only on recommendation of the director of the division of probation and parole or the administrator of the conditional release program or on other proper evidence of expected outpatient compliance with any continued treatment recommendations, and after a contradictory hearing with the district attorney." La. Code Crim. P. art. 658(D). The court may also grant an application for discharge with no probation period. La. Code Crim. P. art. 654.

## V.   <u>STATEMENT OF FACTS</u>

40.    In 1997 and 1999, respectively, Mr. George was allowed to plead guilty, despite his mental illness and significant cognitive disabilities, to charges of criminal trespass and possession of a schedule II substance.

41.    In 2008, based upon his prior convictions of criminal trespass and possession of a schedule II substance, Mr. George was charged with possession of a firearm by a felon.

42.    Following his arraignment, the court initially referred Mr. George's case to a Sanity Commission to determine whether he was competent to stand trial.

43.    The Sanity Commission found that Mr. George was not competent to stand trial.

44.    The recommendation of the Sanity Commission was not adopted by the court. Instead, his case was again referred to the Sanity Commission, this time to determine whether he was NGRI.

45.    The Sanity Commission recommended that Mr. George was NGRI.

46.    On December 15, 2008, following a finding that Mr. George was NGRI to a charge of possession of a firearm by a felon, the court ordered that he be conditionally released pursuant to La. C. Crim. P. art. 657.1, for a period of five years, provided he receive adequate outpatient treatment, supervision, and monitoring.

47.    In ordering Mr. George's conditional release, the court established, among other things, the following conditions:

> a)    That he reside at Progressive Group Home, 1334 Frances Harriet Drive, Baton Rouge, Louisiana.
>
> b)    That he attend the local mental health clinic in Baton Rouge, Louisiana, and follow the treatment recommendations prescribed by his treating physician, as well as comply and cooperate with sessions of counseling and/or treatment, oral and/or injectable medications as ordered by the attending physician.

c)      That he report to the local probation office within twenty-four (24) hours of release from jail, excluding non-business days.

d)      That he be subject to the outpatient tracking/monitoring services to be provided by the Community Forensic Services Program of the Department of Health and Hospitals.

e)      That he sign all consent for release of information forms and agencies involved in the medical/psychiatric care of the defendant shall report on a regular basis to the District Forensic Coordinator or State Probation Officer, who were authorized to have access to progress notes, attendance sheets, medication order sheets, and pertinent medical, psychiatric, psychological, and neurological consultations.

f)      That he refrain from the consumption of alcohol and all illicit drugs and from frequenting places where alcohol/illicit drug sales and consumption occur.

g)      That the Aftercare Provider notify the District Forensic Coordinator and/or State Probation Officer of any positive drug screens or problems related to treatment and/or behavior problems.

48.    Although the location of the group home has changed since 2008, Mr. George continuously resided in a group home setting as required by his conditional release order until May of 2014, except for a period of approximately one month, described below, when he was incarcerated.

49.    The group homes Mr. George resided in are operated by Progressive Health Care Providers (PHP) and are Intermediate Care Facilities for People with Developmental Disabilities ("ICF-DD"). ICF-DD is one of a number of residential services options operated under the auspices of Louisiana's Department of Health and Hospitals' Developmental Disabilities Services System. *See* La. R.S. 28:451.1 *et seq.* As is typical of many group homes, approximately five other individuals, all of whom have a developmental disability and many of whom have mental illnesses, resided in the PHP facilities with Mr. George. The daily operations of these group homes are handled by paid staff. All group home residents must be in active treatment.

50.     During the five years that Mr. George resided in the PHP Group Home, he received an array of mental health services, including a day activities program and a Behavioral Support Plan to address behaviors that are a manifestation of his disability. Mr. George's medication regimen has consisted of Risperdal injections every two weeks, Klonopin, Risperdal, Depakote, Trazodone, and Cogentin.

51.     According to his Behavioral Support Plan, due to his mental illness, Mr. George on some occasions engaged in verbal aggression and non-compliance within the group home and the day program he attended during the week. His Behavioral Support Plan noted that on occasion, he may engage in outbursts and "threatening" episodes when his medication is not correct.

52.     The behaviors that Mr. George manifests are typical of behaviors exhibited by many other men with mental illness and developmental disabilities residing in the close quarters of a group home.

53.     Six months prior to the end of his conditional discharge term, Mr. George was hospitalized and deprived of his needed medication regimen.

54.     As a consequence of not having his medication, Mr. George allegedly engaged in verbal outbursts and threatening behavior, which included yelling at a staff member that he "had better get me a hamburger" and telling another resident at the group home that he was going to kill him. These statements were reported to Scott Tubbs, the Probation and Parole Officer, who monitors Mr. George's conditional discharge.

55.     At the request of Mr. Tubbs, employees of Mr. George's Day Program drove Mr. George to the Probation Officer's office, where he was arrested.

56.     At the time of Mr. George's arrest in July 2013, Mr. Tubbs knew, or should have known, of Mr. George's disabilities and his need for appropriate mental health treatment.

57.     Mr. George was consequently incarcerated from July 29, 2013 to August 23, 2013 at the East Baton Rouge Parish Prison on the basis of the alleged violation of his conditional discharge. He was released only after the undersigned counsel filed a petition for habeas corpus on his behalf in the Nineteenth Judicial District Court of East Baton Rouge Parish.

58.     No criminal charges were ever filed against Mr. George for any behavior that occurred on or before July 29, 2013 that pertained to his incarceration in the East Baton Rouge Prison between July 29, 2013 and August 23, 2013.

59.     After his release from East Baton Rouge Parish Prison in August 2013, Mr. George returned to live in his PHP group home.

60.     In December 2013, prior to the expiration of Mr. George's five-year conditional release period, DHH's forensic coordinator, Defendant Eric Brady, requested that Mr. George's conditional release be extended an additional year.

61.     On May 14, 2014, after several continuances, the court granted the Department's request and extended Mr. George's conditional release to December 14, 2014.

62.     Within a week after the May 14, 2014 hearing, Defendant Brady arranged for Mr. George to be involuntarily hospitalized at the ELMHS.

63.     Upon information and belief, DHH did not afford Mr. George the procedural protections set forth in La. R. S. 28:53-56 while he was confined at ELMHS. Mr. George did not agree to a voluntary admission and Defendant Brady did not secure an emergency certificate pursuant to R.S. 28:53.

64.     Even if the legal basis for Mr. George's commitment at ELMHS was an emergency certificate, by July 1, 2014 such a certificate had long expired.[1]

---

[1]     La. Code of Criminal Procedure Art. 658(B)(4) provides: "If a person on conditional release or otherwise probated under this Chapter is in need of acute, i.e. short-term, hospitalization and is not

65.     DHH did not apply for a judicial commitment under La. R. S. 28:54. Instead, Mr. George remained in ELMHS without written notice of allegations on which his commitment was based, or an opportunity for a hearing, until July 1, 2014.

66.     On July 1, 2014, while still hospitalized at ELMHS, Defendants Eric Brady, Mr. George's Forensic Coordinator, and Dr. Charles P. Vosburg, a psychologist with Community Forensic Services at ELMHS, consulted and decided that Mr. George's "probation" should be revoked and that his probation officer should remove him from ELMHS and cause him to be incarcerated in the East Baton Rouge Parish Prison.

67.     As a consequence, on July 1, 2014, Mr. George was again arrested and incarcerated East Baton Rouge Prison by a representative of the Division of Probation and Parole for violating the terms of his conditional discharge.

68.     At the time they caused him to be arrested and incarcerated, Defendants Eric Brady and Charles P. Vosburg knew, or should have known, of Mr. George's disabilities and his need for appropriate mental health treatment.

69.     Again, Mr. George was forced to apply to the Nineteenth Judicial District Court in East Baton Rouge for relief.

70.     On August 22, 2014, the district court, acting on Plaintiff's Motion for Release, ordered him released from the East Baton Rouge Parish Prison and temporarily placed at ELMHS.

---

charged with a new criminal offense, he may be voluntarily admitted pursuant to R.S. 28:52 or admitted by emergency certificate pursuant to R.S. 28:53 to the Feliciana Forensic Facility or to another suitable treatment facility, with subsequent notice to the court." Under La. R. S. 28:53(A)(1), a person can only be detained 15 days pursuant to an emergency certificate.  In order to detain an individual in a treatment facility past the 15 days, 28:53(H) requires that a petition for judicial commitment under La.R.S. 28:54 be filed.

71.     Despite the district court's order that Plaintiff be immediately released, Plaintiff was not released from the East Baton Parish Rouge Prison and placed at ELMHS until August 25, 2014.

72.     No criminal charges were ever filed against Mr. George for any behavior that occurred on or before July 1, 2014 that pertain to his incarceration in the East Baton Rouge Parish Prison between July 1, 2014 and August 25, 2014.

73.     While incarcerated in 2013 and 2014, Mr. George was deprived of appropriate mental health treatment and, as a result, became very nervous and paranoid.

74.     While incarcerated in 2013 and 2014, Mr. George was not provided with an opportunity to post bail, to have an attorney appointed for him, or to be read his rights. At no time during his incarceration was Mr. George notified of the charges against him or how long he would be held.

75.     While incarcerated in 2013 and 2014, Mr. George was isolated and placed in lockdown for "mental reasons," which meant that he only had 15 minutes to leave his cell to take a shower, had no exercise time, and was restricted in his use of the canteen and in his ability to receive reading material.

76.     At a hearing on September 23, 2014, the Nineteenth Judicial District Court in East Baton Rouge, Judge Moore presiding, ordered that Mr. George remain at ELMHS and that his placement be reviewed at a hearing scheduled for December 11, 2014.

77.     The Defendants, Department of Public Safety and Corrections and Department of Health and Hospitals, as a matter of policy, practice, and procedure, arrest and incarcerate, or secure the arrest and incarceration, of individuals placed on conditional release following a NGRI determination for the sole reason that they are alleged to have violated a condition of their release.

16

78.     Due to Defendants' policies and practices, Mr. George is at substantial risk of future incarceration for breaching conditions of his release and his status as a person who has been found NGRI and compelled to receive mental health services from the Defendants.

79.     The primary purpose for incarcerating individuals in Louisiana correctional facilities is punishment. Such facilities do not have the capacity to provide the mental health treatment to individuals found NGRI.

80.     Only persons with mental illness in Louisiana are intentionally subjected to punishment by incarceration in correctional facilities in the absence of pending criminal charges or a conviction of a criminal offense.

81.     Defendants, at all times relevant to this complaint, acted under color of state law.

82.     Defendants, at all times relevant to this complaint, have acted and continue to act with deliberate indifference to Plaintiff's liberty interests.

83.     Defendants intentionally discriminate against persons found NGRI on the basis of their mental illness by confining them, or causing them to be confined, in Louisiana correctional facilities where they are subjected to punishment and unable to access appropriate mental health services.

84.     Defendants, at all times relevant to this complaint, knowingly and intentionally violated Plaintiffs' constitutional and federal statutory rights.

85.     As a direct and proximate result of the foregoing, Plaintiff has been deprived of his liberty by incarceration in a Louisiana correctional facility and has suffered significant irreparable damage to his mental health.

86.     As a direct and proximate result of Defendants' policies, practices, and procedures, Plaintiff, who is still on conditional release, is in significant jeopardy of again being

subjected to irreparable harm by being incarcerated in a correctional facility and deprived of his mental health treatment and services.

### VI.   CAUSES OF ACTION

### A.   VIOLATION OF SUBSTANTIVE DUE PROCESS

87.   Under the Due Process Clause to the United States Constitution, only individuals who have been properly charged with or convicted of a crime may be punished by incarceration in prison or jail. Jones v. United States, 463 U.S. 354, 369 (1983).   8"[D]ue process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed." Jackson v. Indiana, 406 U.S. 715, 738 (1972).

89.    For insanity acquittees, the purpose of commitment is to provide treatment of their mental illness in a manner that is not punitive, and to protect society from dangerous behavior that may result from that mental illness.

90.   For insanity acquittees, when either dangerousness or mental illness ceases to exist, the State has no legitimate interest in commitment.

91.   Defendants' policies, practices and procedures, which cause individuals with mental illness who have been found NGRI and able to be released on specified conditions without danger to themselves or others, to be confined in correctional facilities for the sole reason that they are alleged to have violated a condition of their release, violates their rights under the Due Process Clause to the United States Constitution.

92.   La. Code Crim. P. art. 658 (B) and La. Code Crim. P. art. 899 are unconstitutional on their face to the extent that they authorize state officials to arrest and incarcerate persons found NGRI merely because they are alleged to have violated a condition of their release.

93.     As set forth in this Complaint, Defendants' actions have violated, and in the absence of injunctive relief are again likely to violate, Plaintiff's rights under the Due Process Clause to the United States Constitution.

**B.      VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT**

94.     As a qualified person with disabilities, Plaintiff is entitled to the protections and benefits of Title II of the Americans with Disabilities Act, which provides that "no qualified individual with a disability shall, by reason of disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by such entity." 42 U.S.C. § 12132.

95.     Regulations implementing the ADA prohibit a public entity from providing any aid, benefit, or service, directly or through contractual licensing, or other arrangements that (i) Deny a qualified individual with a disability the opportunity to participate in or benefit from the aid, benefit, or service;  (ii) Afford a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others; (iii) Provide a qualified individual with a disability with an aid, benefit, or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others; and (iv) Provide different or separate aids, benefits, or services to individuals with disabilities or to any class of individuals with disabilities than is provided to others unless such action is necessary to provide qualified individuals with disabilities with aids, benefits, or services that are as effective as those provided to others. 28 C.F.R. § 35.130(b)(1)(i-iv).

96.     The ADA's implementing regulations further provide that "a public entity may not, directly or through contractual or other arrangements, utilize criteria or other methods of

administration: (i) that have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability…." 28 C.F.R. § 35.130(b)(3).

97.     La. Code Crim. P. art. 658 (B) and La. Code Crim. P. art. 899, on their face, violate the ADA and are contrary to the Supremacy Clause of the United States Constitution to the extent that they authorize state officials to arrest and incarcerate persons found NGRI and placed on conditional release merely because they are alleged to have violated a condition of their release.

98.     Defendants' policies, practices and procedures, which have caused, and in the absence of injunctive relief are likely to cause, Plaintiff to be confined in a correctional facility for the sole reason that he allegedly violated a condition of his conditional release, violate Title II of the ADA.

## C.     VIOLATIONS OF SECTION 504 OF THE REHABILITATION ACT

99.     Section 504 of the Rehabilitation Act states that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of his or her disability, be excluded from participation in, be denied benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance . . .." 29 U.S.C. § 794(a).

100.     Defendants' policies, practices and procedures, which cause individuals with mental illness who have been found NGRI to be confined in state correctional facilities following their commitment to a mental health facility or solely because they are alleged to have violated a condition of their discharge, denies them the opportunity to effectively participate in or benefit from mental health services and subjects them to punishment on the basis of their disability.

101.     Section 504's regulations also prohibit recipients of federal financial assistance from "utiliz[ing] criteria or methods of administration ... (i) [t]hat have the effect of subjecting

20

qualified handicapped persons to discrimination on the basis of handicap …." 45 C.F.R. § 84.4(b)(4); 28 C.F.R. § 41.51(b)(3)(I).

102.    Defendants are utilizing criteria and methods of administration that subject persons with mental illness, such as Plaintiff, to discrimination on the basis of disability, by arresting and incarcerating in state correctional facilities individuals who have been placed on conditional discharge following a finding of NGRI, solely because they are alleged to have violated a condition of their discharge.

103.    La. Code Crim. P. art. 658(B) and La. Code Crim. P. art. 899, on their face, violate Section 504 and are contrary to the Supremacy Clause of the United States to the extent that they authorize state officials to arrest and incarcerate persons found NGRI and placed on conditional release merely because they are alleged to have violated a condition of their release.

104.    Defendants' policies, practices and procedures, which have caused, and in the absence of injunctive relief are likely to cause, Plaintiff to be confined in a correctional facility for the sole reason that he allegedly violated a condition of his conditional release, violate Section 504 of the Rehabilitation Act.

## VII.    PRAYERS FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against the Defendants as follows:

A.    Award Plaintiff compensatory damages in an amount to be shown at trial.

B.    Issue an order granting Plaintiff permanent injunctive relief prohibiting Defendants from arresting and incarcerating individuals in correctional facilities who have been placed on conditional discharge following a finding of NGRI, solely because they are alleged to have violated a condition of their discharge;

C.    Issue a declaratory judgment that Defendants' policies, practices, and procedures of arresting and incarcerating individuals in state correctional facilities who have been placed on

21

conditional discharge following a finding of NGRI, solely because they are alleged to have violated a condition of their discharge violates Plaintiff's rights under the Due Process Clause of the Fourteenth Amendment to United States Constitution, Section 504 of the Rehabilitation Act of 1973, and Title II of the Americans with Disabilities Act of 1990;

      D.      Issue a declaratory judgment that La. Code Crim. P. art. 658 (B) and La. Code Crim. P. art. 899 are, on their face, unconstitutional under the Due Process and Supremacy Clauses of the United States constitution to the extent that they authorize state officials to arrest and incarcerate persons found NGRI and placed on conditional release merely because they are alleged to have violated a condition of their release.

      E.      Award Plaintiff his reasonable attorneys' fees and costs;

      F.      Grant such other and further relief as this Court deems just and proper.

Respectfully submitted this 23d day of September 2014.

TRUSSELL GEORGE, JR.

By and through his attorneys

/s/ Ronald K. Lospennato
Ronald K. Lospennato, Bar No. 32191
rlospennato@advocacyla.org

Concepcion "Koki" Otero, Bar No. 29372*
kotero@advocacyla.org
Advocacy Center
8325 Oak Street
New Orleans, LA 70118
504-208-4679
504-335-2890

Nell Hahn, La. Bar No. 22406
nhahn@advocacyla.org
Advocacy Center
600 Jefferson Street, Suite 812
Lafayette, Louisiana 70501

337-237-7380, ext. 313
337-237-0486 (fax)

James Craig (Bar No. 33687)*
james.craig@macarthurjustice.org

Katie M. Schwartzmann (Bar No. 30295)
katie.schwartzmann@macarthurjustice.org

Roderick & Solange MacArthur Justice Center
4400 S. Carrollton Ave.
New Orleans, LA 70119
(504) 620-2259 (p)
(504) 208-3133 (f)

## CERTIFICATE OF SERVICE

I hereby certify that on September 24, 2014, a copy of the foregoing *First Amended Complaint* was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to counsel of record by operation of the court's electronic filing system.

/s/ Ronald K. Lospennato
Ronald K. Lospennato